IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **FOOTBRIDGE CAPITAL, LLC,** | ) |
| **FGL SOLUTIONS, LLC, and** | ) |
| **OHP II, LP,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| VS. | ) |
| | ) |
| **JETPRO INTERNATIONAL, LLC,** | ) |
|     Serve: Registered Agent Kyle Wine | ) |
|           5 SW Industrial Drive | ) |
|           Lee's Summit, Missouri 64081 | ) |
| | ) |
| | ) |
| **KYLE WINE**, Individually, | ) |
|     Serve: 1712 NE Woodland Shores Lane | ) |
|           Lee's Summit, Missouri 64086 | ) |
| | ) |
| and | ) |
| | ) |
| **PAMELA WINE**, Individually, | ) |
|     Serve: 3361 Kessler Drive | ) |
|           Lee's Summit, Missouri 64081 | ) |
| | ) |
|     **Defendants.** | ) |
| | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
## AND JURY DEMAND

Plaintiffs Footbridge Capital, LLC, FGL Solutions, LLC and OHP II, LP, through their

attorneys Paul V. Herbers and Elizabeth A. Vasseur-Browne from the law firm Cooling & Herbers,

P.C. and Paul A. Lange and Alison L. Squiccimarro from the Law Offices of Paul A. Lange, LLC

(to be admitted *pro hac vice*) for their causes of action against defendants JetPro International,

LLC, Kyle Wine and Pamela Wine, state and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Footbridge Capital, LLC ("Footbridge") is a Delaware Limited Liability Company with its principal place of business at 1120 Boston Post Road, Darien, CT 06820.

2. FGL Solutions LLC ("FGL") is a Connecticut Limited Liability Company with its principal place of business at 60 Harbor Road, Westport, CT 06880.

3. OHP II, LP is a limited partnership formed in accordance with the laws of the state of Delaware with its principal place of business at 1120 Boston Post Road, Darien, CT 06820. OHP II, LP is managed by Old Hill Partners, Inc. Peter Faigl is a director of Old Hill Partners, Inc.

4. JetPro International, LLC ("JetPro") is a Missouri Limited Liability Company with its principal place of business located at 3 N. 47th Ave. Suite 102, Phoenix, Arizona 85043.

5. JetPro is an airframe spare parts provider specializing in the sale of fully traceable, rotatable and consumable spare aircraft parts.

6. Upon information and belief Kyle Wine resides at 1712 NE Woodland Shores Lane, Lees Summit, Missouri 64086.

7. Upon information and belief Pamela Wine, has a principal place of business located at 204 NE Chipman Rd., Lees Summit, Missouri and resides at 3361 Kessler Dr., Lees Summit, Missouri.

8. Upon information and belief, Kyle Wine and Pamela Wine are the only members of JetPro.

9. This Court has personal jurisdiction over all defendants in this matter as defendant JetPro is registered with the Missouri Secretary of State to do business in the state of Missouri and defendants Kyle Wine and Pamela Wine both reside in Lee's Summit, Missouri.  Further

2

defendants entered into contracts in the state of Missouri and committed torts in the state of Missouri.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the controversy is between citizens of different states. All plaintiffs are diverse from all defendants and the amount in damages exceeds the jurisdictional limit.

11. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000), exclusive of interests and costs, and therefore meets the jurisdictional requirement for diversity jurisdiction as set forth in 28 U.S.C. § 1332.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (c). All conditions precedent to the maintenance of this action have been met, waived or excused.

13. Plaintiffs claims arise out of three transactions wherein they along with Defendants formed JPA 300 721, LLC; 79 B737 SWA, LLC; and JP A320 MSN 447, LLC (individually referred to as "SPV" and collectively referred to as "SPVs").

## FACTUAL ALLEGATIONS RELATING TO JP A300 721, LLC

14. On or about October 24, 2018, Kyle Wine contacted Mr. Faigl and proposed a transaction involving the acquisition of an Airbus A300-605R bearing Manufacturer's Serial Number 721 ("A300, S/N 721").

15. The transaction proposed by Kyle Wine was to form a SPV for purposes of purchasing the A300, S/N 721 from AerSale, Inc. Kyle Wine proposed that they would purchase the A300, S/N 721 for $600,000, tear it down and sell the parts (hereinafter "A300 Transaction").

16. In order to induce Mr. Faigl to participate in the A300 Transaction, Kyle Wine advised (1) that he had a purchaser willing to purchase the landing gear of the A300, S/N 721 for

3

between $250,000 and $300,000; (2) that they would incur $150,000 in tear down costs; (3) that they would generate $1.2 Million in sales proceeds the first year; and (4) that they would generate $700,000 in sales proceeds the second year.

17. Kyle Wine and JetPro sought to induce Mr. Faigl to proceed with the A300 Transaction as the first transaction with the intention of approaching Mr. Faigl to proceed with future transactions.

18. As a result of the discussions between Kyle Wine and Mr. Faigl, on or about November 20, 2018, JetPro, Footbridge and FGL entered into a Limited Liability Company Agreement for JP A300 721, LLC ("JP A300 721 Agreement"). *See* <u>JP A300 721 Agreement</u> attached hereto as **Exhibit A.**

19. The purpose of JP A300 721, LLC was to acquire aircraft parts and resell the parts.

20. Pursuant to the JP A300 721 Agreement, JetPro was named the Manager of JP A300 721, LLC.

21. As Manager of JP A300 721, LLC, JetPro's responsibilities include, but are not limited, to:

    (a) paying all expenses and costs incurred by the SPV;

    (b) maintaining bank accounts and executing checks, drafts and orders for the payment of the SPV's funds; and

    (c) selecting and employing certified public accountants, legal counsel and other professionals and consultants for the SPV.

22. The JP A300 721 Agreement specifically precludes, without Footbridge and FGL approval, JetPro from:

4

(a) selling, exchanging or disposing of all or substantially all of the assets owned by the SPV;

(b) borrowing money on behalf of the SPV;

(c) raising capital through the issuance of additional Class A units;

(d) selling any Major Aircraft Parts (including auxiliary power units, landing gear and avionics); and

(e) incurring expenses in excess of $10,000.

23. Upon information and belief, JetPro and/or Kyle Wine formed the SPV.

24. Pursuant to the JP A300 721 Agreement, Footbridge made a capital contribution of $300,000 to JP A300 721, LLC.

25. Pursuant to the JP A300 721 Agreement, FGL made a capital contribution of $100,000 to JP A300 721, LLC.

26. Pursuant to the JP A300 721 Agreement, JetPro was obligated to make a $200,000 capital contribution to JP A300 721 Agreement.

27. Pursuant to the JP A300 721 Agreement, ownership interest of JP A300 721, LLC is as follows:

(a) 16.67% by FGL;

(b) 33.33% by JetPro; and

(c) 50% by Footbridge.

28. Footbridge and FGL were provided with a purchase and sale agreement that was entered into between Aersale, Inc. (the seller of the A300, S/N 721) and JP A300 721, LLC (the purchaser of the A300, S/N 721) reflecting a purchase price of $600,000 (hereinafter the "A300 Purchase and Sale Agreement dated 11/21/18").

29. In his capacity as manager, Kyle Wine signed the A300 Purchase and Sale Agreement dated 11/21/18 on behalf of the SPV and provided Footbridge and FGL a copy of same.

30. On or about November 20, 2018, Kyle Wine represented that the A300, S/N 721 was acquired by the SPV.

31. On or about January 15, 2019, Kyle Wine represented to Mr. Faigl that the A300 was being disassembled and that a payment to Footbridge and FGL would be forthcoming shortly.

32. Beginning on or about March 15, 2019, Footbridge and FGL were provided with monthly accounting reports for JP A300 721, LLC showing that tear down expenses were being incurred and parts were being sold on behalf of the SPV.

33. On or about March 15, 2019, JetPro's controller provided Mr. Faigl with a monthly report reflecting that JetPro was receiving a 25% commission on the sale of parts of the A300, S/N 721.

34. The JP A300 721 Agreement did not provide for JetPro to take a commission on the sale of the assets of the SPV.

35. Mr. Faigl responded to the email and advised that a 25% commission to JetPro was not appropriate under the circumstances.

36. Mr. Faigl and Kyle Wine agreed that JetPro would take a 20% commission on the parts except for Major Aircraft Parts for which JetPro would not receive a commission.

37. Thereafter, on March 15, 2019, JetPro provided revised monthly reports reflecting JetPro's 20% commission.

38. Based upon the monthly reports provided by JetPro to Footbridge and FGL, JetPro sold parts and failed to provide the proportional share of revenue to either Footbridge or FGL.

39. On or about June 4, 2019, JetPro and Kyle Wine advised that JetPro had $341,583.00 in sales and $182,100.92 in expenses associated with the sale of parts of the A300, S/N 721.

40. As of Footbridge and FGL's receipt of the monthly statement for the SPV dated October 31, 2019, FGL and Footbridge were collectively owed in excess of $65,000.

41. Footbridge and FGL sought to have the funds owed to them based upon the monthly reports distributed to them consistent with the JP A300 721 Agreement.

42. JetPro failed to pay Footbridge and FGL the funds owed per the JP A300 721 Agreement.

43. Upon information and belief, JetPro and/or Kyle Wine converted parts of the A300, S/N 721 that were the property of the SPV, LLC and unlawfully sold the converted parts for the personal benefit of Kyle Wine and/or JetPro.

44. Upon information and belief, JetPro and/or Kyle Wine diverted proceeds from the sale of the parts of the A300, S/N 721 and unlawfully retained such proceeds for Kyle Wine's personal benefit and/or the benefit of JetPro.

45. On or about December 11, 2019, Footbridge and FGL notified JetPro that it was being removed as manager of the SPV pursuant to Section 5.8 of the JP A300 721 Agreement.

46. On or about December 11, 2019, Campbell Capital, LLC ("Campbell Capital") was appointed the manager of the SPV.

47. On or about December 12, 2019, Footbridge and FGL demanded that JetPro and Kyle Wine provide an accounting for all the proceeds generated from the improper and unlawful sale of parts from the A300, S/N 721.

48. Kyle Wine and JetPro failed and/or refused to provide FGL and Footbridge with information relating to the bank accounts for JP A300 721, LLC.

7

49. Upon information and belief, JetPro failed to deposit the funds received on behalf of JP A300 721, LLC into the SPV's bank account.

50. Upon information and belief, Kyle Wine and JetPro comingled the funds and assets of JP A300 721, LLC with the funds and assets of Defendants.

51. Upon information and belief, in December 2019, Kyle Wine made it difficult and uncomfortable for other JetPro employees to openly discuss relevant matters the SPV with Campbell Capital and/or FGL and Footbridge.

52. Kyle Wine and JetPro failed and/or refused to provide the accounting requested by Footbridge and FGL.

53. Upon information and belief, in November/December, Kyle Wine and JetPro were planning to move the remaining assets of the SPV which are located in Phoenix, Arizona to Missouri without consultation with either FGL or Footbridge.

54. On or about January 29, 2020, Howe Acres, LLC replaced Campbell Capital as manager of the SPV.

55. As of December 31, 2019, FGL and Footbridge are collectively owed $142,374.40 by Defendants.

56. To date, FGL has received gross proceeds of $3,111.88 from its investment of $100,000.

57. To date, Footbridge has received gross proceeds of $9,333.77 from its investment of $300,000.

## FACTUAL ALLEGATIONS RELATING TO JP B737 SWA, LLC

58. On or about December 17, 2018, Kyle Wine contacted Mr. Faigl and proposed a transaction involving the acquisition of:

(a) A Boeing 737-300 Aircraft bearing serial number 27707 ("737, S/N 27707") including a CFM56-3B1 engine bearing serial number 723260 and a CFM56-3B1 engine bearing serial number 725711; and

(b) A Boeing 737-300 Aircraft bearing serial number 27926 ("737, S/N 27926") including a CFM56-3B1 engine bearing serial number 726237 and a CFM56-3B1 engine bearing serial number 858460.

59. The transaction proposed by Kyle Wine was to form the SPV for purposes of purchasing the above described assets. Kyle Wine proposed that following the acquisition the aircraft would be disassembled and parts of the two (2) Boeing 737s would be sold for profit.

60. On or about December 17, 2018, Kyle Wine and JetPro represented to Mr. Faigl and OHP II, LP that the airframes of the two aircraft could be resold for $750,000 each.

61. On or about December 17, 2018, Kyle Wine and JetPro represented to Mr. Faigl and OHP II, LP that the four (4) engines could be resold for $1.6 Million.

62. Kyle Wine and JetPro represented to Mr. Faigl and OHP II, LP that they did due diligence consistent with industry standards on the 737, S/N 27707 and on the 737, S/N 27926.

63. Kyle Wine and JetPro knew or should have known that a qualified incident report had been issued with respect to the 737, S/N 27707 and that the issuance of the qualified incident report would make the parts of the 737, S/N 27707 more difficult to resell.

64. Kyle Wine and JetPro intentionally concealed the fact that a qualified incident report had been issued with respect to the 737, S/N 27707.

65. Mr. Faigl and OHP II, LP relied upon Kyle Wine and JetPro's representations when considering whether to proceed with the proposed transaction.

66. Mr. Faigl and OHP II, LP would not have proceeded with the proposed transaction had they been aware that a qualified incident report was issued with respect to the 737, S/N 27707.

67. As a result of the discussions, on or about January 7, 2019, JetPro and OHP II, LP entered into a Limited Liability Company Agreement for JP B737 SWA, LLC. ("JP B737 SWA Agreement"). *See* <u>JP B737 SWA Agreement</u> attached hereto as **Exhibit B.**

68. Upon information and belief, Kyle Wine signed the JP B737 SWA Agreement on behalf of JetPro.

69. Jeffrey Haas, a director of OHP II, LP signed the JP B737 SWA Agreement on behalf of OHP II, LP.

70. The purpose of JP B737 SWA, LLC was to acquire the aircraft and engines, and disassemble the airframe and resell the parts and engines.

71. Pursuant to the JP B737 SWA Agreement, JetPro was named the Manager of the SPV.

72. As Manager of JP B737 SWA, LLC, JetPro's responsibilities include, but are not limited, to:

    a. paying all expenses and costs incurred by the SPV;

    b. maintaining bank accounts and executing checks, drafts and orders for the payment of the SPV; and

    c. selecting and employing certified public accountants, legal counsel and other professionals and consultants of the SPV.

73. The JP B737 SWA Agreement specifically precludes, without OHP II, LP approval, JetPro from:

Case 4:20-cv-00075-DGK   Document 1   Filed 02/03/20   Page 10 of 53

a. selling, exchanging or disposing of all or substantially all of the assets owned by the SPV;

b. borrowing money on behalf of the SPV;

c. raising capital through the issuance of additional Class A units;

d. selling any Major Aircraft Parts (including engines, auxiliary power units, landing gear and avionics); and

e. incurring expenses in excess of $10,000.

74. Upon information and belief Kyle Wine and/or JetPro formed the SPV under Delaware law.

75. Pursuant to the JP B737 SWA Agreement, OHP II, LP made a capital contribution of $1,666,667 to the SPV.

76. Pursuant to the JP A300 721 Agreement, JetPro was obligated to make a $333,333 capital contribution to the SPV.

77. Pursuant to the JP B737 SWA Agreement, ownership interest of JP B737 SWA, LLC. was as follows:

(1) 83.35% by OHP II, LP; and

(2) 16.65% by JetPro.

78. OHP II, LP was provided with a purchase and sale agreement entered into between AerSale, Inc. (the seller of 737, S/N 27707 and 737, S/N 27926) and JP B737 SWA, LLC (the purchaser) reflecting a purchase price of $2 Million (hereinafter the "737, S/N 27707 and 737, S/N 27926 Purchase and Sale Agreement dated January 3, 2019").

79. Kyle Wine signed the 737, S/N 27707 and 737, S/N 27926 Purchase and Sale Agreement dated January 3, 2019 on behalf of the SPV and provided OHP II, LP a copy of same on January 7, 2019.

80. On or about January 7, 2019, Kyle Wine represented that 737, S/N 27707 and 737, S/N 27926 were acquired by the SPV.

81. On or about January 16, 2019, Kyle Wine and JetPro provided Mr. Faigl and OHP II, LP a Bill of Sale reflecting that JP B737 SWA, LLC owned the 737, S/N 27707 and 737, S/N 27926 including four (4) engines.

82. OHP II, LP and JetPro agreed that JetPro would receive a 20% commission on the sale of parts except for Major Aircraft Parts for which there would be no commissions.

83. Beginning on or about April 19, 2019, OPH II, LP was provided with accounting reports for JP B737 SWA, LLC showing that tear down expenses were being incurred and parts were being sold on behalf of the SPV.

84. On or about April 19, 2019, JetPro and Kyle Wine provided Mr. Faigl and OHP II, LP with reporting for JP B737 SWA, LLC which demonstrated that JP B737 SWA, LLC had a net income of $931,115.89.

85. Based upon the monthly reports provided by JetPro to OHP II, LP, JetPro has sold parts and has not sought OHP II, LP's consent to sell any Major Aircraft Parts as required by the JP B737 SWA Agreement nor has JetPro provided the proportion of the revenue owed to OHP II, LP.

86. On or about June 4, 2019, JetPro and Kyle Wine represented to OHP II, LP that they had $996,350.00 in sales and $161,868.73 expenses on behalf of JP B737 SWA, LLC.

87. On or about November 8, 2019, JetPro provided OHP II, LP with a report current as of September 30, 2019. Based upon the cash balances shown on the financials, OHP requested a distribution of $547,904.29 which was due to OHP II, LP.

88. As of the monthly report dated November 30, 2019, OHP was owed in excess of $625,000.00 associated with the sale of the assets of JP B737 SWA, LLC.

89. JetPro and Kyle Wine failed to provide OHP II, LP the funds owed per the JP B737 SWA Agreement.

90. Upon information and belief, JetPro and/or Kyle Wine converted the assets of JP B737 SWA, LLC and unlawfully sold the converted parts for the personal benefit of Kyle Wine and/or JetPro.

91. Upon information and belief, JetPro and/or Kyle Wine diverted proceeds from the sale of the assets owned by JP B737 SWA, LLC and unlawfully retained such proceeds for Kyle Wine's personal benefit and/or the benefit of JetPro.

92. On or about December 11, 2019, OHP II, LP notified JetPro that it was being removed as manager of the SPV pursuant to Section 5.8 of the JP B737 SWA Agreement.

93. On or about December 11, 2019, Campbell Capital was appointed the manager of the SPV.

94. On or about December 12, 2019, OHP II, LP demanded that JetPro and Kyle Wine provide an accounting for all the proceeds generated from the improper and unlawful sale of the assets owned by JP B737 SWA, LLC.

95. Upon information and belief, in December 2019 Kyle Wine made it difficult and uncomfortable for other JetPro employees to openly discuss relevant matters of the SPV with Campbell Capital and/or OHP II, LP.

96. Kyle Wine and JetPro failed to turn over custody and control of the banking accounts of JP B737 SWA, LLC.

97. Upon information and belief, the bank accounts had been closed shortly after they were opened due to non-activity.

98. Upon information and belief, JetPro failed to deposit funds of JP B737 SWA, LLC into the appropriate bank accounts.

99. Based upon the limited information shared with OHP II, LP, it appears that Kyle Wine and JetPro comingled the funds and assets of JP B737 SWA, LLC with the funds and assets of Defendants.

100. Kyle Wine and JetPro failed to provide the accounting requested by OHP II, LP.

101. Upon information and belief, in November/December 2019, Kyle Wine and JetPro were planning to move the assets of the SPV to Missouri without consultation with OHP II, LP.

102. On or about January 29, 2020, Old Hill Partners, Inc. replaced Campbell Capital as Manager of the SPV.

103. To date, OHP II, LP has received only $737,554.35 in gross proceeds from its $1,666,667 investment and is owed as of December 31, 2019 $588,221.71.

**FACTUAL ALLEGATIONS RELATING TO JP A320 MSN 447, LLC**

104. On or about December 17, 2018, Kyle Wine contacted Mr. Faigl and proposed a transaction involving the acquisition of an Airbus A320-231 bearing serial number 447 (A320, S/N 447) including a V2500-A1 Engine bearing serial number V0020 and a V2500-A1 Engine bearing serial number V0186.

105. The transaction proposed by Kyle Wine was to form a Limited Liability Company for purposes of purchasing the above described assets. Kyle Wine proposed that following the acquisition the airframe and engines would be resold.

106. Kyle Wine advised Mr. Faigl that the purchase price of the A320, S/N 447 was $6.75 Million and further that JetPro was willing to contribute $2.25 Million capital towards the acquisition if OHP II, LP made a capital contribution of $4.5 Million.

107. On or about December 17, 2018, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that the V2500-A1 Engine bearing serial number V0020 could be sold for $4 Million.

108. On or about December 17, 2018, Kyle Wine and JetPro knew that the V2500-A1 engine bearing serial number did not have a value of $4 Million.

109. On or about December 17, 2018, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that the V2500-A1 engine bearing serial number V0186 could be sold for $2.5 Million.

110. On or about December 17, 2018, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that JetPro would use its own funds to fund JetPro's portion of the capital contribution necessary to acquire the A320, S/N 447 including both engines.

111. Kyle Wine and Mr. Faigl discussed forming JP A320 MSN 447, LLC for purposes of acquiring the A320, S/N 447 including the two engines.

112. On January 9, 2019, in order to induce OHP II, LP into entering into the proposed transaction to acquire the A320, S/N 447, Kyle Wine represented to Mr. Faigl that he already had buyers for the V2500-A1 engine bearing serial number V0020 and a V2500-

A1 engine bearing serial number V0186 under contract and those engines could be sold immediately following the acquisition of A320, S/N 447.

113. In order to induce OHP II, LP into entering into the proposed transaction, on January 9, 2019, Kyle Wine falsely represented to Mr. Faigl that OHP II LP would recoup its capital contributions within 30 days.

114. On or about January 10, 2019, Kyle Wine represented to Mr. Faigl that he had a contract with Advantage Aviation Services Sweden AB to purchase the V2500-A1 engine bearing serial number V0020 immediately following the acquisition of A320, S/N 447 and provided Mr. Faigl with a copy of the contract.

115. On or about January 10, 2019, Kyle Wine falsely represented to Mr. Faigl that he expected that they could sell the V2500-A1 engine bearing serial number V0186 to Virgin Australian Regional Airlines for $4 Million.

116. Mr. Faigl and OHP II, LP relied upon Kyle Wine and JetPro's representations relating to the value of the assets and Kyle Wine and JetPro's ability to sell same expeditiously.

117. On or about January 15, 2019, Mr. Faigl advised Kyle Wine that OHP II, LP was willing to proceed with the proposed transaction.

118. On or about January 18, 2019, JetPro and OHP II, LP entered into a Limited Liability Company Agreement for JP A320 MSN 447, LLC ("JP A320 MSN 447 Agreement"). *See* JP A320 MSN 447 Agreement attached hereto as **Exhibit C**.

119. The purpose of the SPV was to acquire the A320 S/N 447 including the two engines.

120. Pursuant to the JP A320 MSN 447 Agreement, JetPro was named the Manager of the SPV.

16

121. As Manager of JP A320 MSN 447, LLC, JetPro's responsibilities include, but are not limited, to:

    a.   paying all expenses and costs incurred by the SPV;

    b.   maintaining bank accounts and executing checks, drafts and orders for the payment of the SPV; and

    c.   selecting and employing certified public accountants, legal counsel and other professionals and consultants of the SPV.

122. The JP A320 MSN 447 Agreement specifically precludes, JetPro from:

    a.   selling, exchanging or disposing of all or substantially all of the assets owned by the SPV;

    b.   borrowing money on behalf of the SPV;

    c.   raising capital through the issuance of additional Class A units;

    d.   selling any Major Aircraft Parts (including engines, auxiliary power units, landing gear and avionics); and

    e.   incurring expenses in excess of $10,000.

123. Upon information and belief, JetPro formed the SPV.

124. On or about January 17, 2019, an Aircraft Purchase Agreement was entered into between Danish Air Transport Leasing A/S (seller) and JP A320 MSN 447, LLC (purchaser) for the sale of A320, S/N 447 including two (2) V2500-A1 engines bearing serial numbers V0020 and V0186 ("A320, S/N 447 Purchase Agreement dated January 17, 2019").

125. Kyle Wine signed the A320, S/N 447 Purchase Agreement dated January 17, 2019 on behalf of the SPV.

126. On or about January 18, 2019, OHP II, LP made a capital contribution of $4.5 Million to the SPV pursuant to the JP A320 MSN 447 Agreement.

127. Pursuant to the JP A320 MSN 447 Agreement, JetPro was obligated to make a $2.25 Million capital contribution to the SPV.

128. Pursuant to the JP A320 MSN 447 Agreement, ownership interest of JP A320 MSN 447, LLC was as follows:

　　　(1) 33.3% by JetPro; and

　　　(2) 66.7% by OHP II, LP.

129. Upon information and belief, JetPro did not make the required capital contribution with JetPro funds.

130. On or about January 18, 2019, Kyle Wine falsely represented to Mr. Faigl and OHP II, LP that JetPro made the required $2.25 Million capital contribution to the SPV.

131. On January 18, 2019, JP A320 MSN 447, LLC accepted delivery of the A320, S/N 447 from Danish Air Transport Leasing A/S.

132. Kyle Wine executed the Delivery Acceptance Certificate for the A320, S/N 447 (including the two engines) on behalf of the SPV.

133. Immediately following the acquisition of the A320, S/N 447, without the knowledge or approval of OHP II, LP, JetPro and/or Kyle Wine converted the A320, S/N 447 for their own personal benefit.

134. Upon converting the A320, S/N 447 for their own benefit, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that Advantage Aviation Services Sweden AB failed to acquire the V2500-A1 engine bearing serial number V0020.

135. Unbeknownst to OHP II, LP, JetPro and/or Kyle Wine sold the V2500-A1 engine bearing serial number V0020 to Advantage Aviation Services Sweden AB for $2.45 Million and converted the $2.45 Million in proceeds for the benefit of Kyle Wine, Pamela Wine and JetPro individually.

136. Kyle Wine and JetPro further falsely represented to OHP II, LP that the $2.45 Million received in the sale of the V2500-A1 engine bearing serial number V0020 was JetPro's required capital contribution to JP A320 MSN 44, LLC.

137. Notwithstanding the fact that JetPro and Kyle Wine sold the V2500-A1 engine bearing serial number V0020 to Advantage Aviation Services Sweden AB, Kyle Wine continued to represent to OHP II, LP that the SPV was in possession of the V2500-A1 engine bearing serial number V0020.

138. On or about February 3, 2019, Kyle Wine provided OHP II, LP with a Warranty Bill of Sale for the A320, S/N 447 reflecting that "One Airbus A320-231 Aircraft with manufacturer's serial number 447, equipped with two V2500-A1 engines bearing ESN V0020 and V0186 together with any Aircraft documents in the possession" was sold to JP A320 MSN 447, LLC by Danish Air Transport Leasing A/S.

139. On or about February 22, 2019, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that he had contracted on behalf of the SPV to sell that the A320, S/N 447 including the two engines to Royal Alpha Aviation Management Group, SL for $7.75 Million.

140. On or about February 27, 2019, Kyle Wine and JetPro falsely represented to Mr. Faigl and OHP II, LP that the sale to Royal Alpha Aviation Manage Group SL was not likely to

proceed and further advised as to a proposed plan to separate the airframe and two engines and sell them separately.

141. Kyle Wine's false representations that he was looking for buyers to acquire the A320, S/N 447 including the two engines continued through October 2019.

142. On or about April 26, 2019, Kyle Wine falsely represented to OHP II, LP that he had a purchaser for the A320, S/N 447.

143. On or about April 26, 2019, Kyle Wine falsely represented to Mr. Faigl that Firedancer Asset Holding II, LLC ("Firedancer") was interested in purchasing the airframe of the A320, S/N 447 for $1.8 Million.

144. On or about April 26, 2019, Mr. Faigl believing that the SPV still owned the A320, S/N 447, authorized Kyle Wine and JetPro to proceed with the sale of the airframe of the A320, S/N 447.

145. On or about April 26, 2019, Kyle Wine and JetPro falsely represented to OHP II, LP that JP A320 MSN 447, LLC entered into a contract to sell the airframe of the A320, S/N 447 to Firedancer and provided OHP II, LP with a copy of the contract.

146. Upon information and belief and unbeknownst to OHP II LP, on or about April 26, , 2019, JetPro and Kyle Wine falsely represented to Firedancer that JetPro was the rightful owner of the A320, S/N airframe and sold the airframe to Firedancer for $1.3 Million.

147. Upon information and belief and unbeknownst to OHP II, LP, JetPro and Kyle Wine received $1.3 Million from Firedancer as a result of the fraudulent transfer of the airframe of the A320, S/N 447.

148. Upon information and belief, the $1.3 Million that Kyle Wine and JetPro converted from JP A320 MSN 447, LLC following the sale of the airframe of the A320, S/N 447 was used

to pay Kyle Wine and Pamela Wine's personal debts, JetPro's debts and expenses and for JetPro to acquire six (6) V2500-A1 engines bearing serial numbers: V0129, V0130, V0131, V0146, V0148 and V0258 (collectively "engines in Egypt").

149. Upon information and belief, JetPro and/or Kyle Wine subsequently sold the two V2500-A1 engines bearing serial numbers V0148 and V0258 and retained the proceeds from the sale of two (2) of the six (6) engines in Egypt for the benefit of Kyle Wine, Pamela Wine and JetPro.

150. Notwithstanding the fact that he had previously sold the A320, S/N 447 airframe and the V2500-A1 engines bearing ESN V0020, Kyle Wine falsely represented to OHP II, LP that he was continuing to look for purchasers of the A320, S/N 447 and the engines in Egypt on behalf of JP A320 MSN 447, LLC.

151. From April 26, 2019 through June 11, 2019, Kyle Wine falsely represented to Mr. Faigl in emails and in telephone calls that the sale of the airframe of the A320, S/N 447 to Firedancer was delayed.

152. On or about June 11, 2019, Kyle Wine falsely represented to Mr. Faigl that he was going to attempt to collect the deposit paid by Firedancer since they could not close on the purchase of the airframe of the A320, S/N 447 as agreed.

153. On or about June 24, 2019, Kyle Wine falsely represented to Mr. Faigl that he had identified a new purchaser for the airframe of the A320, S/N 447.

154. On or about June 26, 2019, Kyle Wine falsely represented to Mr. Faigl that a Bulgarian Air Charter company was interested in purchasing the airframe of the A320, S/N 447 from the SPV.

155. From June 26, 2019 through December 10, 2019, Kyle Wine and JetPro continued to represent to OHP II, LP that the A320, S/N 447 (including the two engines) had not been sold and that they were owned an in the control of JP A300 MSN 447, LLC and were located at Plane Care Solutions in Sofia Bulgaria.

156. On or about December 10, 2019, Kyle Wine admitted to Peter Faigl that the V2500-A1 engine bearing serial number V0020 was sold "a while ago".

157. On or about December 9, 2019, OHP II, LP learned that Kyle Wine and JetPro sold the airframe of the A320, S/N 447 to Firedancer in April 2019 and did not pay any of the proceeds to JP A320 MSN 447, LLC or OHP II, LP as required by the JP320 MSN 447 Agreement.

158. On or about December 9, 2019, OHP II, LP learned that Kyle Wine and JetPro failed to adhere to commercially reasonable protocols for preserving the V2500-A1 engine bearing serial number V0186.

159. As a result of Kyle Wine and JetPro's failure to properly preserve the V2500-A1 engine bearing serial number V0186, and failure to properly manage, maintain and retain the QEC (a collection of components and accessories installed on a bare engine to speed the eventual installation of the entire engine onto the airframe) and other key parts, the value of the V0186 has diminished.

160. Furthermore, upon information and belief JetPro and Kyle Wine sold portions of the QEC and other portions of the V0186 engine and failed to report them or provide proceeds to JP A320 MSN 447, LLC or OHP II, LP.

161. On or about December 11, 2019, OHP II LP notified JetPro that it was being removed as manager of the SPV pursuant to Section 5.8 of the JP A320 MSN 447 Agreement.

162. On or about December 11, 2019, Campbell Capital was appointed the manager of the SPV.

163. On or about December 12, 2019, OHP II, LP demanded that JetPro and Kyle Wine provide an accounting for all the proceeds generated from the improper and unlawful sale of the assets owned by the SPV.

164. Upon information and belief, in December 2019 Kyle Wine made it difficult and uncomfortable for other JetPro employees to openly discuss relevant matters relating to the SPV with Campbell Capital and/or OHP II, LP.

165. Kyle Wine and JetPro failed to turn over custody and control of the banking accounts of the SPV.

166. Upon information and belief, JetPro failed to open banking accounts for the SPV or failed to deposit funds of JP A320 MSN 447, LLC into the appropriate accounts.

167. Upon information and belief, JetPro and Kyle Wine comingled the funds and assets of JP A320 MSN 447, LLC with Defendants own funds and assets.

168. Upon information and belief, JetPro, Kyle Wine and Pamela Wine used the funds that should have been distributed to JP A320 MSN 447, LLC for their own benefit including paying personal expenses and debts.

169. Kyle Wine and JetPro failed and/or refused to provide the accounting of the SPV requested by OHP II, LP.

170. Kyle Wine and JetPro failed and/or refuse to provide a detailed account of the assets owned by the SPV and the locations of same.

171. Kyle Wine and JetPro refused and failed to provide a detailed account of the proceeds received from the sale of assets of JP A320 MSN 447, LLC.

172. Upon information and belief, in November/December 2019, Kyle Wine and/or JetPro planned to move remaining assets owned by JP A320 MSN 447, LLC from Phoenix, Arizona to Missouri without the knowledge or permission of OHP II, LP.

173. Upon information and belief, in January 2020, Kyle Wine and/or JetPro are planning to move and/or sell the engines in Egypt that were bought with the proceeds of the unlawful sale of the SPV's assets.

174. To date, OHP II, LP has received no proceeds from its $4.5 Million investment.

## CAUSES OF ACTION ASSERTED BY FOOTBRIDGE AND FGL RE: JP A300 721, LLC

## COUNT I – BREACH OF CONTRACT AGAINST JETPRO

175. Footbridge and FGL repeat and reallege paragraphs 1 through 174 as if fully set forth herein.

176. Footbridge and FGL were parties to the JP A300 721 Agreement.

177. JetPro was also a party to the JP A300 721 Agreement.

178. Footbridge, FGL and JetPro were each members of JP A300 721, LLC.

179. From November 20, 2018 until December 12, 2019, JetPro was the Manager of the SPV.

180. During the time period of November 20, 2018 through the present, JetPro breached its obligations to Footbridge and FGL in the following respects:

a. JetPro failed to maintain bank accounts on behalf of the SPV as obligated to pursuant to Article 5.2(c) of the JP A300 721 Agreement;

b. JetPro failed to maintain accurate books and records as obligated to pursuant to Article 5.2(c) and Article 10.1 of the JP A300 721 Agreement;

c.  JetPro sold the assets of the SPV and intentionally failed to remit the proceeds to Footbridge and FGL;

d.  JetPro failed to provide accurate reports upon the requests of Footbridge and FGL as required by Article 10.4 of the JP A300 721 Agreement;

e.  JetPro failed to maintain separate capital accounts on behalf of each of the members of the SPV as required by Article 10.2 of the JP A300 721 Agreement;

f.  JetPro incurred expenses in excess of $10,000 without the approval of FGL and Footbridge in violation of Article 5.3(d);

g.  JetPro commingled the funds, assets and property of JP A300 721, LLC with the property of Defendants;

h.  JetPro allowed the funds, assets and property of JP A300 721, LLC to be unlawfully distributed to Kyle Wine and Pamela Wine;

i.  JetPro placed its interests ahead of the interests of Footbridge and FGL;

j.  JetPro attempted to move the assets of the SPV without the knowledge of FGL and Footbridge; and

k.  JetPro sold Major Aircraft Parts without the consent of Footbridge and FGL as required by the JP A300 721, LLC Agreement.

181. As a result of JetPro's aforestated breach of the JP A300 721 Agreement, Footbridge and FGL have been damaged in the following ways:

a.  Footbridge and FGL have not received their proportional share of the proceeds of the assets of the SPV which are presently calculated at $142,374.40;

25

b.  Footbridge and FGL incurred costs and expenses associated with retaining Campbell Capital to manage JP A300 721, LLC and secure the remaining assets;

c.  Footbridge and FGL incurred legal costs and expenses associated with terminating and removing JetPro as manager of the SPV; and

d.  Footbridge and FGL are expected to incur attorneys' fees and costs in prosecuting the within claim against JetPro.

WHEREFORE, Footbridge and FGL seek the following:

(1) A complete accounting of JP A300 721, LLC;

(2) Rescission of the JP A300 721 Agreement;

(3) Compensatory damages;

(4) Attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Any other relief the Court deems just and proper.

## COUNT II– CONVERSION AGAINST JETPRO, KYLE WINE AND PAMELA WINE

182. Footbridge and FGL repeat and reallege paragraphs 1 through 181 as if fully set forth herein.

183. Between November 18, 2018 and December 12, 2019, JetPro sold certain assets of JP A300 721, LLC.

184. Upon sale of the assets of the SPV, JetPro did not remit a portion of the proceeds to FGL and Footbridge as required by the JP A300 721 Agreement.

185. Upon sale of the assets of the SPV, Defendants converted the proceeds for their own benefit.

186. After converting the proceeds, Defendants engaged in a series of transfers designed to conceal the fraud and hinder and delay FGL and Footbridge's ability to recoup the monies due and owing pursuant to the JP A300 721, LLC Agreement in violation of Missouri Uniform Fraudulent Transfers Act. See MO Rev Stat § 428.005 et seq.

187. As a result of Defendants converting the proceeds from the sale of JP A300 721, LLC, and further violating the Missouri Uniform Transfers Act, FGL and Footbridge have been damaged in the following ways:

    a. Footbridge and FGL have not received their proportional share of the proceeds of the assets of JP A300 721, LLC which are presently calculated at $142,374.40;

    b. Footbridge and FGL incurred costs and expenses associated with retaining Campbell Capital to manage the SPV and secure the remaining assets;

    c. Footbridge and FGL incurred legal costs and expenses associated with terminating and removing JetPro as manager of the SPV; and

    d. Footbridge and FGL are expected to incur attorneys' fees and costs in prosecuting the within claim against Defendants.

**WHEREFORE,** Footbridge and FGL seek the following relief:

(1) A complete accounting of JP A300 721, LLC;

(2) Compensatory damages;

(3) Punitive damages;

(4) Attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Any other relief the Court deems just and proper.

27

## CAUSES OF ACTION ON BEHALF OF OHP II, LP RE: JP B737 SWA, LLC

## COUNT III - BREACH OF CONTRACT AGAINST JETPRO

188. OHP II, LP repeats and realleges paragraphs 1 through 187 as if fully set forth herein.

189. OHP II, LP was a party to the JP B737 SWA Agreement.

190. JetPro was also a party to the JP B737 SWA Agreement.

191. OHP II, LP and JetPro were each members of JP B737 SWA, LLC

192. From January 7, 2019 until December 12, 2019, JetPro was the Manager of JP B737 SWA, LLC.

193. During the time period of January 7, 2019 through the present, JetPro breached its obligations to OHP II LP in the following respects:

    a. JetPro failed to perform due diligence consistent with industry standards before proceeding with the acquisition of the 737, S/N 27707;

    b. JetPro failed to advise OHP II, LP that a qualified incident report was issued with respect to the 737, S/N 27707;

    c. JetPro failed to maintain bank accounts on behalf of the SPV as obligated to pursuant to Article 5.2(c) of the JP B737 SWA Agreement;

    d. JetPro failed to maintain accurate books and records as obligated to pursuant to Article 5.2(c) and  Article 10.1 of the JP B737 SWA Agreement;

    e. JetPro sold the assets of JP B737 SWA, LLC and intentionally failed to remit the portion of the proceeds owed to OHP II, LP;

    f. JetPro failed to provide accurate reports upon the requests of OHP II, LP as required by Article 10.4 of the JP B737 SWA Agreement;

g.  JetPro failed to maintain separate capital accounts on behalf of each of the members of JP B737 SWA, LLC as required by Article 10.2 of the JP B737 SWA Agreement;

h.  JetPro incurred expenses in excess of $10,000 without the approval of OHP II, LP in violation of Article 5.3(d);

i.  JetPro commingled the funds, assets and property of the SPV with the property of JetPro;

j.  JetPro allowed the funds, assets and property of the SPV to be unlawfully distributed to Kyle Wine and Pamela Wine;

k.  JetPro placed its interests ahead of the interests of JP B737 SWA, LLC and OHP II, LP;

l.  JetPro attempted to move the assets of JP B737 SWA, LLC without the knowledge of OHP II, LP; and/or

m.  JetPro sold Major Aircraft Parts without obtaining the consent required by the JP B737 SWA LLC Agreement from OHP.

194. As a result of JetPro's aforestated breach of the JP B737 SWA Agreement, OHP II, LP has been damaged in the following ways:

a.  OHP II, LP has not received its proportional share of the proceeds of the assets of JP B737 SWA, LLC which are presently calculated in excess of $588,221.78;

b.  OHP II, LP incurred costs and expenses associated with retaining Campbell Capital to manage the SPV and secure the remaining assets;

c.  OHP II, LP incurred legal costs and expenses associated with terminating and removing JetPro as manager of the SPV; and

d. OHP II, LP is expected to incur attorneys' fees and costs in prosecuting the within claim against JetPro.

**WHEREFORE**, OHP II, LP seeks the following:

(1) A complete accounting of JP B737 SWA, LLC;

(2) Rescission of the JP B737 SWA Agreement;

(3) Compensatory damages;

(4) Attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Any other relief the Court deems just and proper.

## COUNT IV - CONVERSION AGAINST DEFENDANTS

195. OHP II, LP repeats and realleges paragraphs 1 through 194 as if fully set forth herein.

196. Between January 7, 2019 and the present, JetPro sold certain assets of JP B737 SWA, LLC.

197. Upon sale of the assets of JP B737 SWA, LLC, JetPro did not remit the proceeds to OHP II, LP.

198. Upon sale of the assets of JP B737 SWA, LLC, JetPro, Kyle Wine and Pamela Wine converted the proceeds for their own benefit.

199. After converting the proceeds, Defendants engaged in a series of transfers designed to conceal the fraud and hinder and delay OHP II, LP's ability to recoup the monies due and owing pursuant to the JP A300 721, LLC Agreement in violation of Missouri Uniform Fraudulent Transfers Act. See MO Rev Stat § 428.005 et seq.

200. As a result of Defendants converting the proceeds from the sale of the assets of the SPV, OHP II, LP has been damaged in the following ways:

a. OHP II, LP has not received their proportional share of the proceeds of the assets of JP B737 SWA, LLC which are presently calculated at $588,221.78;

b. OHP II, LP incurred costs and expenses associated with retaining Campbell Capital to manage JP B727 SWA, LLC and secure the remaining assets;

c. OHP II, LP incurred legal costs and expenses associated with terminating and removing JetPro as manager of JP B727 SWA, LLC; and

d. OHP II, LP is expected to incur attorneys' fees and costs in prosecuting the within claim against Defendants.

**WHEREFORE,** OHP II, LP seek the following relief:

(1) A complete accounting of JP B737 SWA, LLC;

(2) Compensatory damages;

(3) Punitive damages;

(4) Attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Any other relief the Court deems just and proper.

## CAUSES OF ACTION ON BEHALF OF OHP II, LP RE: JP A320 MSN 447, LLC

## COUNT V - BREACH OF CONTRACT AGAINST JETPRO

199. OHP II, LP repeats and realleges paragraphs 1 through 198 as if fully set forth herein.

200. OHP II, LP was a party to the JP A320 MSN 447 Agreement.

201. JetPro was also a party to the JP A320 MSN 447 Agreement.

202. OHP II, LP and JetPro were each members of JP A320 MSN 447, LLC

203. From January 16, 2019 until December 12, 2019, JetPro was the Manager of JP A320 MSN 447, LLC.

204. During the time period of January 16, 2019 through the present, JetPro breached its obligations to OHP II, LP in the following respects:

    a.  JetPro failed to maintain bank accounts on behalf of the SPV as obligated to pursuant to Article 5.2(c) of the JP A320 MSN 447 Agreement;

    b.  JetPro failed to maintain accurate books and records as obligated to pursuant to Article 5.2(c) and Article 10.1 of the JP A320 MSN 447 Agreement;

    c.  JetPro sold the assets of JP A320 MSN 447, LLC and intentionally failed to remit the proceeds to OHP II, LP;

    d.  JetPro failed to provide accurate reports upon the requests of OHP II, LP as required by Article 10.4 of the JP A320 MSN 447 Agreement;

    e.  JetPro failed to maintain separate capital accounts on behalf of each of the members of the SPV as required by Article 10.2 of the JP A320 MSN 447 Agreement;

    f.  JetPro failed to exercise commercially reasonable efforts to secure JP A320 MSN 447, LLC's interest in the assets acquired with the funds of JP A320 MSN 447, LLC;

    g.  JetPro sold Major Aircraft Parts without the express authorization of OHP II, LP in violation of Article V of the JP A320 MSN 447 Agreement;

    h.  JetPro sold Major Aircraft Parts for a value different than what was authorized by OHP II, LP;

    i.  JetPro incurred expenses in excess of $10,000 without the approval of OHP II, LP in violation of Article 5.3(d);

j.  JetPro commingled the funds, assets and property of JP A320 MSN 447, LLC with the property of Defendants;

k.  JetPro allowed the funds, assets and property of JP A320 MSN 447, LLC to be unlawfully distributed to Kyle Wine and Pamela Wine;

l.  JetPro placed its' interests ahead of the interests of JP A320 MSN 447, LLC and OHP II, LP;

m.  JetPro sought to borrow money against the assets of the SPV in violation of Article V of the JP A320 MSN 447 Agreement; and/or

n.  JetPro attempted to move the assets of JP A320 MSN 447, LLC without the knowledge of OHP II, LP.

205. As a result of JetPro's aforestated breach of the JP A320 MSN 447 Agreement, OHP II, LP has been damaged in the following ways:

a.  OHP II, LP has not received the proceeds of the sale of the assets belonging to JP A320 MSN 447, LLC which are presently calculated in excess of $3.75 Million;

b.  OHP II, LP sustained a loss when the assets of JP A320 MSN 447, LLC were sold at a rate less than what OHP II, LP agreed to resulting in a loss to OHP II, LP in excess of $500,000;

c.  OHP II, LP incurred costs and expenses associated with retaining Campbell Capital to manage JP A320 MSN 447, LLC and secure the remaining assets;

d.  OHP II, LP incurred legal costs and expenses associated with terminating and removing JetPro as manager of JP A320 MSN 447, LLC; and

e. OHP II, LP is expected to incur attorneys' fees and costs in prosecuting the within claim against JetPro.

**WHEREFORE,** OHP, II LP seeks the following:

(1) A complete accounting of JP A320 MSN 447, LLC;

(2) Rescission of the JP A320 MSN 447 Agreement;

(3) Compensatory damages;

(4) Attorneys' fees and costs;

(5) Prejudgment interest; and

(6) Any other relief the Court deems just and proper.

## COUNT VI - CONVERSION AGAINST DEFENDANTS

206. OHP II, LP repeats and realleges paragraphs 1 through 205 as if fully set forth herein.

207. Between January 16, 2019 and the present, JetPro sold certain assets of JP A320 MSN 447, LLC without the permission of OHP II, LP.

208. JetPro and/or Kyle Wine sold the assets of JP A320 MSN 447, LLC to third parties without the consent of OHP II, LP.

209. JetPro and/or Kyle Wine falsely represented to third parties that they owned the assets of JP A320 MSN 447, LLC.

210. JetPro and/or Kyle Wine did not timely notify OHP II, LP that it had sold assets of JP A320 MSN 447, LLC .

211. In an attempt to conceal their fraud, following the sale the assets, JetPro and/or Kyle Wine misrepresented to OHP II, LP that the assets had not been sold.

212. JetPro and Kyle Wine failed to remit the proceeds of the sale of the assets to OHP II, LP.

213. Upon sale of the assets of JP A320 MSN 447, LLC, Defendants converted the proceeds for their own benefit.

214. After converting the proceeds, Defendants engaged in a series of transfers designed to conceal the fraud and hinder and delay FGL and Footbridge's ability to recoup the monies due and owing pursuant to the JP A300 721, LLC Agreement in violation of Missouri Uniform Fraudulent Transfers Act. See MO Rev Stat § 428.005 et seq.

215. As a result of Defendants converting the proceeds from the sale of the assets of JP A320 MSN 447, LLC, OHP II, LP has been damaged in the following ways:

a. OHP II, LP has not received their proportional share of the proceeds of the assets of the SPV which are presently calculated in excess of $3.75 Million;

b. OHP II, LP incurred costs and expenses associated with retaining Campbell Capital to manage, LLC and secure the remaining assets;

c. OHP II, LP incurred legal costs and expenses associated with terminating and removing JetPro as manager of the SPV; and

d. OHP II, LP is expected to incur attorneys' fees and costs in prosecuting the within claim against Defendants.

**WHEREFORE,** OHP II, LP seeks the following relief:

(1) A complete accounting of JP A320 MSN 447, LLC;

(2) Restitution sufficient to return OHP II, LP to the position it would have been had the JP A320 MSN 447 Agreement not been entered;

(3) Compensatory damages;

(4) Punitive damages;

(5) Prejudgment interest;

(6) Attorneys' fees and costs; and

(7) Any other relief the Court deems just and proper.

## COUNT VII - FRAUD AGAINST JETPRO AND KYLE WINE

216. OHP II, LP repeats and realleges paragraphs 1 through 215 as if fully set forth herein.

217. On or about January 9, 2019, Kyle Wine and JetPro approached OHP II, LP seeking to join together for purposes of acquiring the A320, S/N 447 complete with the V2500-A1 engine bearing serial number V0020 and a V2500-A1 engine bearing serial number V0186.

218. Beginning on or about January 9, 2019 and continuing until January 19, 2019, Kyle Wine and JetPro repeatedly falsely represented to OHP II, LP that JetPro and/or Kyle Wine would make a capital contribution of $2.25 Million to JP A320 MSN 447, LLC which funds would be used by JP A320 MSN 447, LLC to acquire the A320, S/N 447 complete with the V2500-A1 engine bearing serial number V0020 and a V2500-A1 engine bearing serial number V0186.

219. Kyle Wine and JetPro knew they did not have $2.25 Million to make the capital contribution to JP A320 MSN 447, LLC at the time that they represented to OHP II, LP that they would make the capital contribution.

220. Kyle Wine and JetPro falsely represented to OHP II, LP that they would make the $2.25 Million capital contribution to the SPV in order to induce OHP II, LP to enter into the JP A320 MSN 447 Agreement.

221. Kyle Wine and JetPro falsely represented to OHP II, LP that they would make the $2.25 Million capital contribution to JP A320 MSN 447, LLC in order to induce OHP II, LP to make a capital contribution of $4.5 Million.

36

222. On or about January 10, 2019, Kyle Wine and JetPro falsely represented to OHP II, LP that they contracted on behalf of JP A320 MSN 447, LLC to sell the V2500-A1 engine bearing serial number V0020 to Advantage Aviation Services Sweden AB upon acquisition of the A320, S/N 447.

223. On or about January 10, 2019, Kyle Wine and JetPro falsely represented to OHP II, LP that they contracted on behalf of JP A320 MSN 447, LLC to sell the V2500-A1 engine bearing serial number V00186 to Virgin Australia Regional Airlines

224. Kyle Wine and JetPro falsely represented to OHP II, LP that they had contracted on behalf of the SPV to sell the two engines immediately following the acquisition of the A320, S/N 447 in order to induce OHP II, LP to enter into the JP A320 447 Agreement and to make the capital contribution.

225. Relying upon Kyle Wine and JetPro's representations that the A320, S/N 447 including his representation that the two engines were being acquired by the SPV and that they were under contract to be immediately resold, OHP II, LP entered into the JP A320 MSN 447 Agreement and made the capital contribution of $4.5 Million.

226. On or about January 18, 2019, Kyle Wine and JetPro falsely represented to OHP II, LP that JP A320 MSN 447, LLC was acquiring the A320, S/N 447 complete with the V2500-A1 engine bearing serial number V0020 and a V2500-A1 engine bearing serial number V0186.

227. At the time that Kyle Wine and JetPro falsely represented to OHP II, LP that JP A320 MSN 447, LLC was acquiring the A320, S/N 447 complete with the V2500-A1 engine bearing serial number V0020 and a V2500-A1 engine bearing serial number V0186, they knew that the SPV would not be acquiring the V2500-A1 engine bearing serial number

V0020 because they had made arrangements to sell the V2500-A1 engine bearing serial number V0186 to Advantage Aviation Services Sweden AB as a means of generating the funds necessary to acquire the A320, S/N 447 since neither Kyle Wine nor JetPro could make the required capital contribution.

228. At all times relevant, Kyle Wine and JetPro deliberately concealed the fact that the V2500-A1 engine was not being acquired by the SPV in order to induce OHP II, LP to make the capital contribution of $4.5 Million.

229. On or about January 18, 2019, unbeknownst to OHP II, LP and after OHP II, LP made the capital contribution of $4.5 Million, Kyle Wine and JetPro sold the V2500-A1 engine to Advantage Aviation Services Sweden AB for $2.45 Million.

230. From January 18, 2019 through December 10, 2019, Kyle Wine and JetPro knowingly and intentionally concealed from OHP II, LP the fact that the V2500-A1 engine bearing serial number V0020 had been sold in the following ways:

    a.  Providing OHP II, LP with a Warranty Bill of Sale for the A320, S/N 447 including the two engines on or about February 3, 2019;

    b.  Falsely representing that the deal with Advantage Aviation Services Sweden AB had not gone through;

    c.  Falsely representing that JP A320 MSN 447, LLC was in possession of the V2500-A1 Engine with serial number V0020 on statements presented to OHP II, LP;

    d.  Falsely representing to Peter Faigl that they were engaged in efforts to sell the V2500-A1 engine bearing serial number V0020 on behalf of the SPV; and

e. Creating a general impression that the V2500-A1 engine bearing serial number V0020 remained in the possession of JP A320 MSN 447, LLC.

231. Kyle Wine and JetPro intentionally concealed the fact that they had sold the V2500-A1 engine bearing serial number V0020 in an effort to thwart OHP II, LP from seeking remedies for Kyle Wine and JetPro's conversion of the V2500-A1 engine bearing serial number V0020.

232. Kyle Wine and JetPro intentionally concealed the fact that they had sold the V2500-A1 engine bearing serial number V0020 so that they could conceal the fact that they did not make the required capital contribution to JP A320 MSN 447, LLC.

233. Upon information and belief, on or about April 10, 2019, Kyle Wine and JetPro sold the airframe of the A320, S/N 447 to Firedancer for $1.3 Million.

234. OHP II, LP was not advised of the sale of the airframe of the A320, S/N 447 and did not consent to the sale of the airframe of the A320, S/N 447 for $1.3 Million.

235. Kyle Wine and JetPro did not remit the $1.3 Million received from Firedancer to JP A320 MSN 447, LLC.

236. Kyle Wine and JetPro did not remit the revenue earned on the sale of the airframe to OHP II LP.

237. Kyle Wine and JetPro knowingly and intentionally concealed the April 10, 2019 sale of the airframe of the A320, S/N 447 from OHP II, LP in the following ways:

a. Presenting Peter Faigl at OHP II, LP with a fraudulent Aircraft Purchase Agreement dated April 26, 2019 reflecting that the SPV would sell the airframe to Firedancer for $1.8 Million;

b. Falsely representing to Peter Faigl in an email dated May 20, 2019 that the sale to Firedancer had not closed;

c. Falsely representing to Peter Faigl in an email dated June 5, 2019 that he was continuing to pursue Firedancer to acquire both the airframe and engines; and

d. Falsely representing to Peter Faigl in emails dated June 10 and 11, 2019 that he is going to collect Firedancer's deposit since it did not proceed with the purchase of the airframe of the A320, S/N 447.

238. Kyle Wine and JetPro knowingly and intentionally concealed the April 10, 2019 sale of the airframe of the A320, S/N from OHP II, LP in an effort to thwart OHP II, LP from seeking remedies for Defendants' conversion of the airframe of the A320, S/N 447.

239. Kyle Wine and JetPro knowingly and intentionally concealed the April 10, 2019 sale of the airframe of the A320, S/N OHP II, LP so that Defendants could convert the proceeds from the sale of the airframe and use the proceeds for their own benefit.

240. After converting the proceeds, Defendants engaged in a series of transfers designed to conceal the fraud and hinder and delay FGL and Footbridge's ability to recoup the monies due and owing pursuant to the JP A300 721, LLC Agreement in violation of Missouri Uniform Fraudulent Transfers Act. See MO Rev Stat § 428.005 et seq.

**WHEREFORE**, OHP II, LP seeks the following relief:

a. A complete accounting of JP A320 MSN 447, LLC;

b. Restitution sufficient to return OHP II, LP to the position it would have been had the JP A320 MSN 447 Agreement not been entered;

c. Compensatory damages;

d. Punitive damages;

e.  Prejudgment interest;

f.  Attorneys' fees and costs; and

g.  Any other relief the Court deems just and proper.

## COUNTS APPLICABLE TO ALL TRANSACTIONS

## COUNT VIII – REPLEVIN AGAINST ALL DEFENDANTS

241. Plaintiffs repeat and reallege paragraphs 1 through 241 as if fully set forth herein.

242. Plaintiffs are the majority owners of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

243. Defendant JetPro, a prior manager of the SPVs was removed as the manager of all three by Plaintiffs.

244. Upon information and belief, notwithstanding JetPro's removal as manager, Defendants continue to represent to third parties that they have authority to sell, convey and/or otherwise dispose of the assets owned by the SPVs.

245. Parts of an A300 aircraft bearing serial number 721 owned by JP A300 721, LLC are presently located at Defendant JetPro's warehouse at 3 N. 47th Ave. Suite 102, Phoenix, Arizona 85043 (hereinafter "JetPro's warehouse").

246. Parts of a B737-300 bearing serial number 27707 owned by JP B737 SWA, LLC are presently located at Defendant JetPro's warehouse.

247. Parts of a B737-300 aircraft bearing serial number 27926 owned by JP 737 SWA, LLC are presently located at Defendant JetPro's warehouse.

248. A V2500-A1 Engine bearing serial number V00186 owned by JP A320 MSN 447, LLC is presently located at GT Engine Services, Stansted, England.

41

249. Landing gear from the B737 aircraft bearing serial number 27707 owned by JP B737 SWA, LLC is presently located at SunCoast Landing Systems in Florida.

250. Upon information and belief, there are other parts owned by JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC that may be located at various repair shops undergoing repairs.

251. Upon information and belief, Defendants continue to seek to exercise control over and interfere with Plaintiffs rights with respect to the above described property, which is owned by the SPVs.

252. Defendants have arranged for receivables due to the SPVs to be diverted from JetPro's principal place of business and forwarded to Kansas City, MO.

253. Defendants continue to divert the receivables due to each of the SPVs so as to interfere with Plaintiffs' ability to collect the receivables.

254. The property described in the within count, including the receivables, is all property of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC each of which Plaintiffs have a majority interest in.

255. Custody, control and possession of the property described in the within count, including the receivables, properly rests with JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

256. Possession of the property described in the within count, including the receivables, must be turned over to the respective managers of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC to be handled consistent with the terms of the applicable limited liability company agreements.

**WHEREFORE,** Plaintiffs seek the following relief:

a. A writ of possession pursuant to Mo. Rev. Stat. §533.010 directing that Defendants turn over possession of the following as directed:

    i. Parts of an A300 aircraft bearing serial number 721 owned by JP A300 721, LLC and presently located at Defendant JetPro's warehouse to be immediately turned over to Howe Acres, LLC, the manager of JP A300 721, LLC;

    ii. Parts of a B737-300 bearing serial number 27707 owned by JP B737 SWA, LLC and presently located at Defendant JetPro's warehouse at to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

    iii. Parts of a B737-300 aircraft bearing serial number 27926 owned by JP 737 SWA, LLC and presently located at Defendant JetPro's warehouse to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

    iv. A V2500-A1 Engine bearing serial number V00186 owned by JP A320 MSN 447, LLC presently located at GT Engine Services, Stansted, England to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC; and

    v. Landing gear from the B737 aircraft bearing serial number 27707 owned by JP B737 SWA, LLC presently located at SunCoast Landing Systems in Florida to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC.

    vi. Any receivables of JP A300 721, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and

forwarded to Kansas City, MO are to be turned over to Howe Acres, LLC, the manager of JP A300 721, LLC; and

      vii.   Any receivables of JP B373 SWA, LLC and JP A320 MSN 447, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and forwarded to Kansas City, MO to be turned over to Old Hill Partners, Inc. the manager of JP B373 SWA, LLC and JP A320 MSN 447, LLC.

  b.  Punitive damages;

  c.  Prejudgment and Post-judgment interest;

  d.  Attorneys' fees, legal fees and costs; and

  e.  Any other relief the Court deems just and proper.

## COUNT IX – TEMPORARY RESTRAINING ORDER AGAINST ALL DEFENDANTS

257. Plaintiffs repeat and reallege paragraphs 1 through 256 as if fully set forth herein.

258. Defendant JetPro was previously the manager of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

259. Plaintiffs are the majority owners of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

260. Defendants have admitted to converting funds and assets properly owned by JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC and deceiving Plaintiffs for many months.

261. Defendants deception was designed to thwart Plaintiffs ability to discover the fraud and exercise their remedies.

262. Notwithstanding having been removed as manager of the SPVs on December 11, 2019, upon information and belief, Defendants continue to hold out to third parties that they have the ability to sell, convey and/or otherwise dispose of the property belonging to JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

263. On or about December 19, 2019, after having been removed as manager of JP A320 MSN 447, LLC, Defendants were negotiating with third parties to sell the V2500-A1 engine bearing serial number V0186 owned by JP A320 MSN 447, LLC.

264. Defendants directed that receivables owed to the SPVs and Plaintiffs be redirected so as to hinder JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC from receiving those receivables.

265. Upon information and belief, Defendants continue to receive the receivables that are the property of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

266. Defendants are in possession of funds and property of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC each of which Plaintiffs own a majority interest of.

267. Defendants are in possession of funds that are owed to Plaintiffs.

268. Defendants are unable to repay the sums converted from Plaintiffs despite Plaintiffs' requests and reasonable opportunities.

269. Upon information and belief, Defendants continue to fraudulently transfer assets and dispose of property so as to hinder and delay Plaintiffs ability to recoup on any judgment that may be awarded.

270. Upon information and belief, Defendants are presently attempting to move, sell, convey, conceal and/or otherwise dispose of four (4) V2500-A1 engines that were acquired with funds diverted from Plaintiffs and JP A320 MSN 447, LLC.

271. Upon information and belief, Defendants are seeking further financing opportunities which may impact the funds and assets available to cover any judgment received by Plaintiffs.

272. In the absence of a temporary restraining order, Plaintiffs ability to collect the sums owed to it by Defendants will be severely compromised.

**WHEREFORE,** Plaintiffs seek the following relief:

    a. A writ of possession pursuant to Mo. Rev. Stat. §533.010 directing that Defendants turn over possession of the following as directed:

        i. Parts of an A300 aircraft bearing serial number 721 owned by JP A300 721, LLC and presently located at Defendant JetPro's warehouse to be immediately turned over to Howe Acres, LLC, the manager of JP A300 721, LLC;

        ii. Parts of a B737-300 bearing serial number 27707 owned by JP B737 SWA, LLC and presently located at Defendant JetPro's warehouse at to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

        iii. Parts of a B737-300 aircraft bearing serial number 27926 owned by JP 737 SWA, LLC and presently located at Defendant JetPro's warehouse at to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

iv. A V2500-A1 Engine bearing serial number V00186 owned by JP A320 MSN 447, LLC presently located at GT Engine Services, Stansted, England to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC; and

v. Landing gear from the B737 aircraft bearing serial number 27707 owned by JP B737 SWA, LLC presently located at SunCoast Systems, FL to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC.

vi. Any receivables of JP A300 721, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and forwarded to Kansas City, MO are to be turned over to Howe Acres, LLC, the manager of JP A300 721, LLC; and

vii. Any receivables of JP B373 SWA, LLC and JP A320 MSN 447, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and forwarded to Kansas City, MO to be turned over to Old Hill Partners, Inc. the manager of JP B373 SWA, LLC and JP A320 MSN 447, LLC.

b. Attachment of the following property of JetPro:

i. the assets of JetPro located in JetPro's warehouse;

ii. the four V2500-A1 engines bearing serial numbers: V0129, V0130, V0131, and V0146 presently located in Cairo, Egypt; and

iii. all accounts held by JetPro, Kyle Wine and Pamela Wine which received proceeds of the unlawful sale of the property of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC.

c.  Restraining Kyle Wine and JetPro from acting or purporting to act on behalf of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC;

d.  Restraining Defendants from disposing of assets;

e.  Restraining Kyle Wine and JetPro from incurring further debt; and

f.  Any other relief the Court deems just and proper.

## COUNT X – PRELIMINARY INJUNCTION AGAINST ALL DEFENDANTS

273. Plaintiffs repeat and reallege paragraphs 1 through 272 as if fully set forth herein.

274. Defendant JetPro was previously the manager of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

275. Plaintiffs are the majority owners of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

276. Defendants have admitted to converting funds and assets properly owned by JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC and deceiving Plaintiffs for many months.

277. Defendants deception was designed to thwart Plaintiffs ability to discover the fraud and exercise their remedies.

278. Notwithstanding having been removed as manager of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC on December 11, 2019, upon information and belief, Defendants continue to hold out to third parties that they have the ability to sell, convey and/or otherwise dispose of the property belonging to JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

279. On or about December 19, 2019, after having been removed as manager of JP A320 MSN 447, LLC, Defendants were negotiating with third parties to sell the V2500-A1 engine bearing serial number V0186 owned by JP A320 MSN 447, LLC.

280. Defendants directed that receivables owed to JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC be redirected so as to hinder JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC from receiving those receivables.

281. Upon information and belief, Defendants continue to receive the receivables that are the property of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

282. Defendants are in possession of funds and property of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC each of which Plaintiffs own a majority interest of.

283. Defendants are in possession of funds that are owed to Plaintiffs.

284. Defendants have been unable to repay the sums converted from Plaintiffs despite Plaintiffs' requests and reasonable opportunities.

285. Upon information and belief, Defendants continue to fraudulently transfer assets and dispose of property so as to hinder and delay Plaintiffs ability to recoup on any judgment that may be awarded.

286. Upon information and belief, Defendants are presently attempting to move, sell, convey, conceal and/or otherwise dispose of four (4) V2500-A1 engines that were acquired with funds diverted from Plaintiffs and JP A320 MSN 447, LLC.

287. In the absence of a temporary restraining order, Plaintiffs ability to collect the sums owed to it by Defendants will be severely compromised.

49

**WHEREFORE,** Plaintiffs seek the following relief:

a. A writ of possession pursuant to Mo. Rev. Stat. §533.010 directing that Defendants turn over possession of the following as directed:

    i. Parts of an A300 aircraft bearing serial number 721 owned by JP A300 721, LLC and presently located at Defendant JetPro's warehouse to be immediately turned over to Howe Acres, LLC, the manager of JP A300 721, LLC;

    ii. Parts of a B737-300 bearing serial number 27707 owned by JP B737 SWA, LLC and presently located at Defendant JetPro's warehouse to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

    iii. Parts of a B737-300 aircraft bearing serial number 27926 owned by JP 737 SWA, LLC and presently located at Defendant JetPro's warehouse at to be immediately turned over to Old Hill Partners, Inc. the manager of JP B737 SWA, LLC;

    iv. A V2500-A1 Engine bearing serial number V00186 owned by JP A320 MSN 447, LLC presently located at GT Engine Services, Stansted, England to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC; and

    v. Landing gear from the B737 aircraft bearing serial number 27707 owned by JP B737 SWA, LLC presently located at SunCoast Systems, FL to Old Hill Partners, Inc. the manager of JP A320 MSN 447, LLC.

    vi. Any receivables of JP A300 721, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and

forwarded to Kansas City, MO are to be turned over to Howe Acres, LLC, the manager of JP A300 721, LLC; and

    vii. Any receivables of JP B373 SWA, LLC and JP A320 MSN 447, LLC including, but not limited to, those which were diverted from JetPro's principal place of business and forwarded to Kansas City Mo to be turned over to Old Hill Partners, Inc. the manager of JP B373 SWA, LLC and JP A320 MSN 447, LLC.

b. Attachment of the following property of JetPro:

    i. the assets of JetPro located in JetPro's warehouse;

    ii. the four V2500-A1 engines bearing serial numbers: V0129, V0130, V0131, and V0146 presently located in Cairo, Egypt; and

    iii. all accounts held by JetPro, Kyle Wine and Pamela Wine which received proceeds of the unlawful sale of the property of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC.

c. Restraining Kyle Wine and JetPro from acting or purporting to act on behalf of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC;

d. Restraining Defendants from depositing or otherwise retaining receivables that are the property of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC;

e. Restraining Defendants from disposing of assets;

f. Restraining Kyle Wine and JetPro from incurring further debt; and

g. Any other relief the Court deems just and proper.

## COUNT X – PERMANENT INJUNCTION AGAINST KYLE WINE AND JETPRO

288. Plaintiffs repeat and reallege paragraphs 1 through 286 as if fully set forth herein.

289. Defendant JetPro was previously the manager of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

290. Plaintiffs are the majority owners of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

291. Notwithstanding having been removed as manager of JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC on December 11, 2019, upon information and belief, Defendant Kyle Wine and Jet Pro continue to hold out to third parties that they have the ability to sell, convey and/or otherwise dispose of the property belonging to JP A300 721, LLC; JP B737 SWA, LLC; and JP A320 MSN 447, LLC.

292. On or about December 19, 2019, after having been removed as manager of JP A320 MSN 447, LLC, Defendants were negotiating with third parties to sell the V2500-A1 engine bearing serial number V0186 owned by JP A320 MSN 447, LLC.

293. Defendants actions in holding themselves out as having the authority to sell or dispose of the property of JP A300 721, LLC; JP B737 SWA, LLC and JP A320 MSN 447, LLC creates a risk that innocent third parties may be defrauded.

294. Defendants actions in holding themselves out as having the authority to sell or dispose of the property of JP A300 721, LLC; JP B737 SWA, LLC and JP A320 MSN 447, LLC causes confusion in the marketplace and hinders the ability of JP A300 721, LLC; JP B737 SWA, LLC and JP A320 MSN 447, LLC to resell the assets that they respectively own and for Plaintiffs to recoup on their investments.

**WHEREFORE**, Plaintiffs seek the following relief:

a. Permanently enjoining Kyle Wine and JetPro from acting or purporting to act on behalf of JP A300 721, LLC, JP B737 SWA, LLC and JP A320 MSN 447, LLC;

b. Permanently enjoining Kyle Wine and JetPro from offering any property of JP A300 721, LLC; JP B737 SWA, LLC and JP A320 MSN 447, LLC for sale or seeking to otherwise encumber the property;

c. Permanently enjoining Kyle Wine and JetPro from depositing any receivable of JP A300 721, LLC; JP B737 SWA, LLC and JP A320 MSN 447, LLC; and

d. Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a jury for all such triable issues.

**Dated:** February 3, 2020

Respectfully submitted,

**COOLING & HERBERS, P.C.**

*/s/ Elizabeth A. Vasseur-Browne*
Paul V. Herbers, Mo. Bar # 28536
Elizabeth Vasseur-Browne, Mo. Bar # 54281
Cooling & Herbers, P.C.
1100 Main Street, Suite 2400
Kansas City, MO 64105
(816) 474-0777
lbrowne@coolinglaw.com

**THE LAW OFFICES OF PAUL A LANGE**
Alison L. Squiccimarro (to be admitted *Pro Hac Vice*)
Paul A. Lange (to be admitted *Pro Hac Vice*)
80 Ferry Boulevard
Stratford, CT 06614
(203) 375-7724
als@lopal.com
pal@lopal.com
**ON BEHALF OF PLAINTIFFS**

53